NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0086n.06
Filed: November 12, 2004

No. 03-5869

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SRIRASACK SRISAVATH, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| SERGEANT WILLIAM RICHARDSON, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:    SILER, MOORE, and COLE, Circuit Judges.

**R. GUY COLE, JR.**, **Circuit Judge**.  In this 42 U.S.C. § 1983 case, Plaintiff-Appellee

Srirasack Srisavath claims Defendant-Appellant Sergeant William Richardson violated the Fourth

Amendment through an improper search and seizure.  The district court denied Sergeant

Richardson's motion to dismiss on the basis of qualified immunity, and we **AFFIRM.**

## I.  BACKGROUND

Near midnight on October 30, 1997, Sgt. Richardson was dispatched to the Extended Stay

Hotel located at the corner of Church Street and Summit View Place in Brentwood, Tennessee.  The

dispatch was prompted by an anonymous telephone call reporting that "there were six to eight

teenagers in baggy pants running around [the hotel parking lot] looking into parked cars."  *State v.*

*Srisavath,* No. M2000-02159-CCA-R3-CD, 2001 WL 227355 at *1 (Tenn. Crim. App. March 8,

2001).   Recently, there had been several automobile thefts in the area.

While on Church Street, Sgt. Richardson observed a car, driven by Srisavath and containing three male passengers, turning from Summit View Place onto Church Street, near the hotel parking lot. At that time, Sgt. Richardson saw no cars in the parking lot. Nevertheless, he immediately pursued and stopped Srisavath's car. The car's occupants were eventually ordered out of the car, and during a routine weapons search, a bag of marijuana was found.

Srisavath was convicted in Tennessee court for possession of marijuana with intent to sell and was sentenced to one and one-half year's imprisonment and assessed a $2000 fine. On appeal, the Tennessee court of appeals reversed the conviction, explaining:

> Here, the information provided to police by an anonymous informant was that six to eight teenagers in baggy pants had been looking in the windows of cars parked in a hotel parking lot. Police were particularly alert because there had been automobile burglaries in the general area. When the officer arrived at the street corner adjacent to the hotel, he saw the 24-year-old defendant driving a vehicle occupied by three other individuals. The officer did not see the defendant commit an offense, traffic or otherwise, but suspected that the car may have been in the hotel parking lot. According to the record, however, the officer could not see any other parked cars in the portion of the lot nearest to the intersection when he first observed the defendant. The officer was unable to corroborate the anonymous tip either by patrolling the entire lot, circling the hotel, or looking for youths in baggy pants. The officer had no description of any car driven by the suspects or, in fact, any knowledge as to whether they were in a car. The anonymous informant, while perfectly justified in being suspicious of individuals looking into the windows of parked cars, did not actually see any criminal conduct. While the issue is close, it is our view that the totality of the circumstances did not warrant an investigatory stop.

*Id.* at *2.

Srisavath then filed a complaint under 42 U.S.C. § 1983 against Sgt. Richardson and two other Brentwood police officials. Srisavath alleged that Sgt. Richardson "made no investigation as to the [anonymous] complaint given" and "only glanced to his right into the parking lot and seeing

no cars in the front of the units, immediately turned around and caught up with the vehicle" driven by Srisavath. Srisavath further alleges that such actions violated his Fourth Amendment rights regarding unreasonable search and seizure.

Sgt. Richardson timely answered the complaint and filed a Rule 12(b)(6) motion to dismiss on the ground that the suit was barred by qualified immunity. The district court denied the motion, holding that the traffic stop did not have the reasonable suspicion necessary to stop Srisavath under *Terry v. Ohio,* 392 U.S. 1 (1968). This appeal ensued.

## II. ANALYSIS

### A.    Jurisdiction and Standard of Review

As this is a § 1983 action, this Court has jurisdiction to review the decision of the trial court. *See* 28 U.S.C. §§ 1291 and 1331.

A district court's denial of qualified immunity is a question of law reviewed *de novo* by this Court. *Spurlock v. Satterfield,* 167 F.3d 995, 1000 (6th Cir. 1999). Regarding a Rule 12(b)(6) motion, this Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). The motion should only be granted "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### B.    Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This Court conducts the following three-step inquiry for qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003).

Regarding the first prong, the district court found that Sgt. Richardson's behavior constituted a violation of the Fourth Amendment because he did not have reasonable suspicion to stop Srisavath's vehicle. According to the Complaint, Sgt. Richardson received information from a police dispatcher that an anonymous phone call identified six to eight young teenagers in baggy pants roaming around the hotel parking lot. Sgt. Richardson further observed Srisavath's vehicle coming from the direction of the hotel soon after the dispatch.

Based on these allegations, Sgt. Richardson could not have had sufficient information to form a reasonable suspicion of illegal activity. Interpreting Supreme Court precedent, this Court has found that "when an anonymous tip is neither supported with indicia of reliability nor corroborated with police observation, it cannot provide an officer reasonable suspicion for a *Terry* stop." *Feathers*, 319 F.3d at 849. Here, the anonymous call was not supported by any such objective indicia. It consisted of nondescript, "easily obtained facts and conditions existing at the time of the tip," and did not communicate the occurrence of any illegal activity or predict future behavior.

*Alabama v. White*, 496 U.S. 325, 332 (1990). Nor can the mere fact that Srisavath was found "in the relevant area" be sufficient to corroborate the anonymous tip. *Feathers*, 319 F.3d at 846, 850 (holding that a matching description of person in the relevant area, by itself, is insufficient to corroborate an anonymous tip). As we must view the allegations of the Complaint liberally in favor of Srisavath, the investigatory stop must be deemed unconstitutional.

Regarding the second prong, the constitutional right at issue here is clearly established. It is well settled that an officer must corroborate an anonymous tip, or otherwise establish its reliability, in order to have reasonable suspicion. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000) (noting that an anonymous tip, without other sufficient indicia of reliability, seldom suffices as reasonable suspicion for a *Terry* stop); *Feathers*, 319 F.3d at 850 ("The Supreme Court has emphasized the importance of establishing the reliability of anonymous tips in 1990 in *White* and had re-affirmed that principle in *J.L.*, decided [in 2000]."). *Terry* and its progeny confirm that a reasonable officer would know of the need to corroborate the anonymous tip received by the dispatcher. *See id.*

Third, using the framework of the Complaint's factual allegations, Sgt. Richardson's conduct at the time of the *Terry* stop was "objectively unreasonable." This Court recognizes that where an officer is unaware a dispatcher's information is based on an anonymous tip, an officer's reliance on the dispatcher may be reasonable. *See id.* at 851. Based on the allegations in this Complaint, however, this Court must infer that Sgt. Richardson was aware that the call to the dispatcher was anonymous. Accordingly, there was no "sufficient factual basis for thinking that [the officer was] acting consistently with *Terry*" when he stopped Srisavath's vehicle. *Id.*

The dissent argues that Sgt. Richardson's actions, as alleged, were objectively reasonable based on four factors: (1) the time of night; (2) the high number of auto burglaries in the area; (3) the absence of other cars in the parking lot of the hotel; and (4) the fact that the Tennessee court found no constitutional violation, and noted that the issue was close. However, such factors cannot be used to support reasonable suspicion under *Feathers,* at least where it is alleged that the officer knew that the dispatcher's information was based on an anonymous tip. *See id.* at 850 (holding where anonymous tip alleges no criminal conduct, and does not predict future activity, merely finding a person matching a description in a certain area is insufficient to support reasonable suspicion). Although we are mindful that the Tennessee court stated that "the issue is close," *State v. Srisavath,* 2001 WL 227355 at *2, state court decisions on federal law are not binding on the federal courts. *See e.g. Lewis v. Casey,* 518 U.S. 343, 379 n.7 (1996) (citing many cases which note that a state court determination on federal law is not binding on the federal courts).

Based on these allegations, the district court correctly concluded that Sgt. Richardson was not entitled to qualified immunity.[1]

### III. CONCLUSION

Accordingly, this Court **AFFIRMS** the district court's denial of Defendant-Appellant's motion to dismiss on the basis of qualified immunity.

---

[1]Sgt. Richardson's brief, which cites deposition testimony of his personal observations and deliberations of the evening to explain his actions, may not be considered by this Court on a motion to dismiss. The arguments, however, can be fully evaluated on a motion for summary judgment, where Sgt. Richardson may again raise an affirmative defense of qualified immunity and support his motion with additional materials outside of Srisavath's Complaint.

SILER, Circuit Judge, dissenting. I disagree with the majority's conclusion in upholding the ruling of the district court denying the motion to dismiss on the basis of qualified immunity.

The majority correctly states that the issue of qualified immunity arose before the district court under a motion to dismiss under Fed. R. Civ. P. 12(b)(6), although it appears that the court may have considered matters beyond the pleadings. Nevertheless, at argument counsel for the plaintiff indicated that we should consider that the district court denied the motion under Rule 12(b)(6).

The majority correctly analyzes the determination for qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); and *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). However, I disagree with the conclusion by the majority that the complaint states that the defendant, Sergeant William Richardson, "received information from a police dispatcher that an anonymous phone call identified six to eight young teenagers in baggy pants roaming around the hotel parking lot." The complaint instead says that "the Brentwood Police Department received an anonymous call from an unknown source that there were six to eight teenagers in baggy pants running around looking into parked cars at the Extended Stay Hotel." Nothing in the complaint suggests that Richardson knew that the information came from an anonymous call. In *Feathers*, we ruled that the officers in that case were entitled to qualified immunity when they effected an arrest based upon an anonymous tip to the police department. The fact that the officers had not been told by the police dispatcher that the information came from an anonymous source was very significant in granting qualified immunity. There, although we found that the stop violated the Fourth Amendment, the arrested party could not prevail in his suit under 42 U.S.C. § 1983

- 7 -

"because the individual defendants had a sufficient factual basis for thinking that they were acting consistently with *Terry*." *Id*. at 851. Therefore, the failure of the plaintiff in this case to allege that Richardson knew that the tip came from an anonymous source is fatal on a motion to dismiss.

Moreover, even if one assumes that the complaint alleges that Richardson knew the tip relayed via dispatch was anonymous, still it cannot be said that his actions were objectively unreasonable. "[T]he question is whether 'any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.'" *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994). Even excluding the tip, several factors weigh in favor of Richardson's determination that he had a reasonable suspicion to stop the car in which Srisavath was traveling: the time of night, the high number of auto burglaries in the area, and the absence of other cars in the parking lot of the hotel. Indeed, perhaps the best evidence of the objective reasonableness of Richardsons's actions is the fact that the Tennessee trial court found no constitutional fault with the stop in question, and the Tennessee Court of Criminal Appeals that eventually reversed and found that the circumstances did not warrant an investigatory stop, ruled that "the issue is close."

Therefore, even if the stop and search was unconstitutional, nevertheless, the officers are protected under the doctrine of qualified immunity. Thus, I would reverse the denial of qualified immunity for Richardson.